## WILLIAM H. THOMPSON *vs.* SACO WATER POWER COMPANY.

A. agreed with B. to superintend B.'s machine shop for five years, B. having the power to terminate the contract at any time, for $1800 a year, and a portion of the profits to be determined by deducting the expenses of the year from the price of machinery sold, the account to be settled annually, and not to be reopened after settlement, except that such settlement was not to affect the adjustment of claims arising out of an earlier termination of the contract. At the termination of the contract the value of raw material and unfinished machinery was to be ascertained. If the defendant terminated the contract, and the plaintiff had received less than $5000 a year, the defendant was to pay enough in addition to make up that sum. An annual settlement had been made June 1, and the defendant terminated the contract December 18, following. In an action to recover the plaintiff's proportion of the profits from June 1 to December 18, *Held,* that he was not entitled to profits for a part of a year.

CONTRACT to recover $41,042.47, alleged to be due as profits under a written contract made between the plaintiff and the defendant, a copy of which with a copy of the extension thereof was annexed to the declaration. Writ dated February 5, 1867.

By the contract, which was made May 13, 1857, the plaintiff covenanted and agreed to perform the duties of superintendent of the defendant's machine shop for five years from the first of the next June, "unless the present agreement shall be sooner terminated as hereafter provided." And the defendant "covenants and agrees with the said Thompson to pay him the sum of $1800 per annum, in four equal quarterly payments; and the said company further agrees that an account of the profits of said machine shop shall be made up annually in the manner hereinafter provided, and the said Thompson shall receive as a further compensation for the service above mentioned the sum or sums following, to wit, a sum equal to one half of the profits so made up, until and unless the said profits shall exceed the sum of $6400; and in case the said profits shall exceed the said sum of $6400, the said Thompson shall also receive a further sum equal to one third of such excess; but the said Thompson shall have no interest in said profits as profits, nor any lien thereon for the amount of his compensation as aforesaid. And it is further agreed between the said parties, that the annual profits of said machine shop shall be made up as follows: the business of the year shall be charged

with all the expenditures and items following; to wit, all expen‑ ditures for labor and materials used and employed in the business of said machine shop, including fuel, oil, watchmen, materials and labor, for keeping the tools, machinery and buildings in good re‑ pair;" "the expenses of repairing or replacing the flumes or wheels of the carpenter's shop, blacksmith's shop or foundry, shall be charged to the current operations of the year as a part of the annual expenditure; also the cost of any new patterns or tools that may be required for the building of cotton machinery; and of the amount now charged to the account of new tools, that part which belongs to the tools now in use in said machine shop shall in due proportion from year to year be chargeable to current ex‑ penses; also one half of the salary and of the expenses of the office in Boston of the treasurer of said company; also the amount of interest paid by said company on account of the business of said machine shop, and the amount paid as taxes and for insur‑ ance on the buildings, machinery, tools and other property em‑ ployed in carrying on the business of said machine shop; together with all customary and reasonable charges for general expense in conducting the business; also the sum of $1800 a year as salary of the said Thompson, and the sum of $6000 a year as rent of said machine shop, tools, foundry, carpenter's and blacksmith's shops, and for wear and tear of the same. The sum total of all the foregoing charges and items shall be deemed and considered to be the cost of the machinery or other articles manufactured in said machine shop under the direction and superintendence of said Thompson during the year. This sum shall be deducted from the amount received as the price of the machinery or other articles sold, and the excess, if any, shall be considered as the profits derived from the business of said machine shop, and as the sum by which the compensation of said Thompson is to be deter‑ mined, according to the computation hereinbefore mentioned. It is further agreed between the said parties, that all accounts be‑ tween them shall be made up and settled annually; and that after such yearly settlement no claim arising out of the present agreement shall be made or allowed by or on behalf of either of the said parties, and all necessary and proper writings, receipts

and other vouchers shall be interchanged annually by the said parties, fixing and determining such settlement ; provided, nevertheless, that in case the present agreement shall be terminated as hereafter specially provided, before the expiration of five years from the first day of June next, the foregoing provision shall not restrain or affect the allowance and adjustment of all claims arising out of such earlier termination as aforesaid." " And at the expiration or other earlier termination of this agreement as hereinafter provided, the value and cost of all raw materials or unfinished machinery then on hand shall be computed and ascertained according to the provisions of the present agreement." " It is further agreed between said parties, that all the buildings, machinery and tools shall be kept in good repair, and an account shall be made up and rendered annually by the said Thompson of the amount expended for that purpose ; and further, that the said buildings, machinery and tools shall be given up to said company by the said Thompson, at the expiration or other earlier termination of this contract, in good working order and condition. It is further understood and agreed between the said parties, that in case the said Saco Water Power Company shall at any time decide to close up and discontinue the business of manufacturing machinery, or to appropriate the aforesaid premises now occupied for that purpose to some other use, or to sell the said premises ; or in case the said Thompson shall fail to perform all and singular the acts by him to be performed under this contract, the said Saco Water Power Company, in either of the cases mentioned, may terminate the present agreement, subject to the following agreement and stipulation ; to wit, if the said company shall terminate the said contract within the term of three years from the first day of June next, and provided also that at the date of such termination the said Thompson shall have received as compensation under the present agreement a sum less than $4000 a year, the said company shall pay to the said Thompson the amount requisite at the date of such termination to make up the said yearly compensation of $4000.   But if the said Thompson shall have already received under this contract an amount equal to such yearly compensation, he shall have no claim against the

said company. And in case the said company shall terminate the present contract after three years from the first day of June next, the said Thompson shall receive an amount sufficient to make up a yearly compensation of $5000, for and during the continuance of said contract; provided always that the said Thompson shall not have already received under this contract a sum equal to or greater than such yearly compensation. And it is further agreed between the said parties, that in case the present agreement shall be terminated by the death of said Thompson, the said company shall pay to the personal representative of said Thompson the amount necessary to make up to the date of such termination a yearly compensation of $4000, provided always that if the said Thompson shall have already received under the present agreement a sum equal to or greater than such yearly compensation, this provision shall be wholly void and of no effect."

This contract was extended for the further term of five years, by the following vote of the company's directors, accepted and assented to in writing by the plaintiff:

"Voted, that the proposition of said Thompson, in said letter contained, to renew the present contract existing between said Thompson and the company, and to extend the same for the term of five years from the time of the expiration of said contract, that is, for five years from the first day of June, which will be in the year eighteen hundred and sixty-two, be and the same is hereby accepted, with the following modifications, as proposed in said letter, of the present contract; to wit, that in making up the accounts of the company in May, 1860, one eighth of all that may stand charged on the books of the company for new tools in use in the shop, and for steam-engine, its building, fixtures and appurtenances, and for gas fixtures, or for any new building that may be added to the plant of the company in connection with the machine shop and appurtenances, and of all other similar charges, shall be charged to current expenses; and that in making up the accounts of the company in May, 1861, one seventh of all the before mentioned charges which may stand charged to any or all the foregoing accounts on the books of the company shall be charged to current expenses; and in like manner in

May, 1862, one sixth of the foregoing charges shall be charged to current expenses; and in May, 1863, one fifth; and in May, 1864, one fourth; and in May, 1865, one third; and in May, 1866, one half; and in May, 1867, the balance of said charges which may stand charged on the books of the company on the foregoing accounts shall be charged to current expenses."

At the trial in this court, before *Morton*, J., the defendant admitted that the plaintiff performed the contract on his part; that the defendant elected to sell and did sell the machine shop, buildings, appurtenances, machinery and tools in the contracts mentioned, and on the 18th December, 1866, notified the plaintiff thereof, and requested him to deliver to the agent of the purchasers the purchased property; that the plaintiff thereupon notified and requested the defendant to make up an account of the profits of the business from June 1, 1866, to December 18, 1866, in the manner provided for in the contracts, and to pay him what should appear on such account to be due and coming to him; that the defendant neglecting to take and make up such account, he caused an account to be taken, by which it appeared that under his construction of the contracts a large sum of money was due to him. Thereupon it was agreed that the case should be reported; and that if in the opinion of the full court the plaintiff was entitled to a share of the profits between June 1, 1866, and December 18, 1866, an assessor should be appointed to determine the amount; otherwise the plaintiff should become nonsuit.

*H. W. Paine & R. D. Smith*, for the plaintiff.

*B. F. Thomas & R. Olney*, for the defendant.

ENDICOTT, J. By this contract the plaintiff entered the employment of the defendants for five years, and was to receive an annual salary of $1800, and one half the annual profits, unless the same should exceed $6400, in which case he was to receive one third of the excess. The contract carefully recites what items of expenditure shall be charged to the business each year in determining the profits. The sum total of these items is to be deducted from the amount received as the price of machinery and other articles actually sold, and the excess is to be taken as profits.

and as the sum upon which the plaintiff's compensation for the year is to be determined. The annual account thus settled was conclusive between the parties of all matters included in it, but in case the agreement should be terminated within the five years, such settlement was not to restrain or affect the adjustment of all claims arising out of such earlier termination. This earlier termination referred to is, by another clause of the contract, within the power of the defendants, the plaintiff having no right to terminate, and being bound for the full term. This clause provides that if the defendants decide during the term at any time to discontinue the business, to sell or appropriate the premises to another use, or in case the plaintiff fails to perform his duties under the contract, then the defendants may terminate it. If they so decide within three years from its commencement, and the plaintiff has received under it less than $4000 a year, then the defendants shall pay him the amount requisite to make his yearly compensation $4000 to the date of such termination. If they terminate after three years, then he shall have $5000 a year. But if he has already under the contract received an amount equal to such yearly compensation, he shall have no claim against the company because of such termination. If the contract is terminated by the plaintiff's death, then the defendants shall pay to his personal representatives a sum sufficient to make up a yearly compensation of $4000.

These are the main features of the contract. Two clauses are especially relied upon by the plaintiff, as changing materially the general provisions above recited:

First, " Provided the agreement shall be terminated as hereafter specially provided," " the foregoing provision shall not restrain or affect the allowance and adjustment of all claims arising out of such earlier termination."

Second, " And at the expiration or earlier termination of this agreement, as hereafter provided, the value and cost of all raw materials or unfinished machinery then on hand shall be computed and ascertained according to the provisions of the present agreement."

The contract, originally for the term of five years from June 1, 1857, was extended at its expiration for five years from June 1, 1862. The annual accounts appear to have been settled to June 1, 1866. The defendants decided to sell and did sell the property, and on December 18, 1866, so notified the plaintiff. The plaintiff claims that he is entitled, under the contract, to an account of the profits from June 1 to December 18, 1866, and to be paid what is due him under such account. To recover what he thus claims to be due this action is brought. The defendants contend that he is not entitled to any account, or to any profits for that fractional portion of the year.

Unless the two clauses relied on by the plaintiff modify and control the other provisions of the contract, this action cannot be maintained.

1. It was evidently the general purpose of the agreement to pay the plaintiff, in addition to his salary, a certain proportion of the annual profits. This proportion was to be computed, at the end of each contract year, upon the excess of funds accruing from actual sales, after the payment of the expenses of the year. These annual settlements were final and conclusive, but if the defendants terminated the contract, they were bound to pay the plaintiff such additional sum for each year's services as would make the sum of four thousand or five thousand dollars per annum, if that sum had not already been received by the plaintiff from his annual settlements. In other words, the annual settlements were conclusive, except when, on terminating the contract, payments might have to be made to the plaintiff to bring his compensation up to the stated sum per annum, in which case such annual accounts could be opened to ascertain what compensation he had already received. We think this to be the true construction of the first clause relied upon by the plaintiff, and that it in no wise bears upon the question at issue, whether the plaintiff is entitled to the profits of a fractional part of a year.

2. The other clause relied on presents a question of more difficulty. It simply provides (for what purpose does not in terms appear) for the taking an account of the value of the raw material and unfinished machinery on hand at the expiration or earlier

termination of the contract. Nothing is said about profits or any rights of the plaintiff .arising out of such appraisal. Taking the words in their strict meaning, the case presents nothing to which the provision seems to apply. No raw material or unfinished machinery was on hand December 18, when the defendant terminated the contract. Everything had then been sold, and there was nothing on hand, the value of which could be ascertained. The plaintiff does not claim that there can or should be such appraisal, but that he is entitled, under this clause, to have an account of the profits from June 1 to December 18, made up in the manner provided in the contract. We do not think that such is the interpretation of this clause, or that such a right can be inferred from it. Such interpretation would materially affect and substantially nullify the provision that the compensation of the plaintiff is to be determined by annual accounts during the continuance of the contract. It would also conflict directly with the provisions fixing the rights of the parties, upon the earlier termination of the contract by the defendants. These provisions contemplate in such event the assurance to the plaintiff of a round sum per annum, and no more. They preclude the idea, that there is to be any accounting, or any regard paid to accounts or profits, except so far as it is necessary to open settled annual accounts to ascertain what the plaintiff has already received; and no allusion is made to any appraisal of stock on hand. A similar provision is made if the contract terminates by the death of the plaintiff; then there is to be no accounting, but the round sum of $4000 per annum is assured to be paid his personal representatives.

To whatever contingency, therefore, arising under the contract, this clause may apply, it does not apply to the estimating of profits for the fraction of a year, and cannot be held by implication to change the rate of compensation upon termination, for which the contract elsewhere makes express and careful provision. If the parties had intended any other than annual accounts, the contract should have provided in more distinct terms for making them for fractional portions of a year.

The plaintiff is not entitled to a share of the profits claimed, and by the terms of the report the entry must be

*Plaintiff nonsuit.*